**SAFEWAY STORES, INC., Appellant,**

v.

**Eva LECK et vir., Gus Leck, Appellees.**

**No. 5647.**

Court of Civil Appeals of Texas, Waco.

Nov. 4, 1976.

Rehearing Denied Nov. 18, 1976.

John F. Green, Jr., McBryde, Bogle & Green, Fort Worth, for appellant.

Robert J. Wilson, Burleson, for appellees.

## OPINION

JAMES, Justice.

This is a slip and fall case. Plaintiff-Appellees Eva Leck and husband Gus Leck brought this suit against Defendant-Appellant Safeway Stores, Inc. and Defendant Jim Sullivan (Safeway's store manager) to recover damages for personal injuries sustained by Eva Leck growing out of an accident which occurred in Appellant's store in Cleburne, Texas, on October 16, 1973, on which occasion Eva Leck slipped and fell on a foreign substance, to wit, produce trimmings which were on the floor in an aisle of the Appellant's store. The case was tried to a jury which rendered a verdict in favor of Plaintiff-Appellees Leck and against Defendant-Appellant Safeway. The verdict awarded the Lecks damages in the total amount of $20,040.00. Pursuant to the jury's verdict, the trial court entered judgment in favor of the Lecks against Safeway for the amount of damages found by the jury, but the judgment decreed that the Lecks take nothing against the Defendant Jim Sullivan. From this judgment, Safeway appeals on eighteen points of error. We overrule all of Appellant's points of error and affirm the trial court's judgment.

By its verdict in answer to the following numbered special issues the jury found:

(1) On the occasion in question there were produce trimmings on the floor in the aisle in the store;

(1A) Such produce trimmings on the floor in the aisle was a dangerous condition;

(2) Eva Leck fell in the aisle because of produce trimmings on the floor;

(3) The fall caused personal injuries to Eva Leck;

(4) An employee of Safeway caused the produce trimmings to be on the floor in the aisle;

(5) Such action was negligence;

(6) And a proximate cause of the personal injuries of Eva Leck;

(7) The employees of Safeway failed to warn Eva Leck of produce trimmings in the aisle in question;

(8) Such failure to warn was negligence;

(9) And a proximate cause of the personal injuries to Eva Leck;

(10) On the occasion in question employees of Safeway failed to make a proper inspection of the aisle in question;

(11) Such failure was negligence;

(12) And a proximate cause of the personal injuries of Eva Leck;

(13) The jury failed to find that Eva Leck failed to keep a proper lookout;

(14) No answer made to this proximate cause issue, and none necessary in view of the jury's failure to find as above indicated in response to Issue No. 13;

(15) The jury found that Eva Leck failed to discover and appreciate any danger which existed in the aisle on the occasion in question; but

(16) Failed to find that such failure was negligence; and

(17) No answer made to this proximate cause issue and none necessary in view of the jury's failure to find as above indicated in response to Issue No. 16.

In answer to Issues Numbers 18 and 19 the jury found damages in the total amount of $20,040.00.

By its first point of error Appellant asserts that the evidence conclusively shows that the produce trimmings upon which Eva Leck slipped and fell were as a matter of law so open and obvious that she was charged in law with knowledge and appreciation of whatever dangerous condition existed with respect to the floor, and consequently Appellant Safeway owed no duty to warn her or protect her with respect to the floor's condition. We do not agree, and therefore overrule this point and contention.

Eva Leck was 69 years of age at the time of trial, and was a housewife. Her husband, Gus Leck, was seventy years of age, and was a retired taxicab driver. Prior to the occasion in question, Mrs. Leck had shopped in this particular Safeway store many times, and was well familiar with the general arrangement of same. At about 5 P.M. on Tuesday, October 16, 1973, she went to this Safeway store to purchase groceries. The store faces south. Mrs. Leck entered the store at an entrance near the east end of the front of the store. She got a pushcart and first went to the meat counter (which is along the east side of the store) and picked up some bacon. Then she picked up "something else" (she couldn't remember what it was) and then got some eggs, and then entered aisle 4 from the back end of the store. The produce department is at the west end of the store, and the aisles are numbered beginning from the west end of the store toward the east. Aisle 4 then was the fourth aisle east of the produce department.

Mrs. Leck entered aisle 4 from the rear end of said aisle pushing the shopping pushcart ahead of her, and she had not proceeded down said aisle "over three or four feet" when she slipped and fell. She was a rather short person in height, and was looking for and trying to reach some merchandise on the second shelf from the top at or about the time she slipped and fell. Her feet went out from under her, causing her to land on her buttocks and the base of her back, thereby bringing about the personal injuries for which this suit was brought. She fell into and sat down in what appeared to her to be "garbage," being "celery leaves off the end of celery and old beat up lettuce leaves" which were strewn "up and down the aisle there just like you would string something on the floor." These produce trimmings were in aisle four beginning about three feet from the rear end of the aisle and scattered along the floor of this aisle some six to eight feet. The testimony is undisputed that the substance on the floor consisted of produce trimmings of celery and lettuce, and were not the type of materials that would be or were displayed or offered for sale by the store.

Appellant contends that these produce trimmings on the floor of aisle four were so open and obvious that Mrs. Leck was charged in law with knowledge and appreciation of the dangerous condition, so that Safeway owed her no duty to warn her or protect her from such condition of the floor. We do not agree. In the first place, aisle four was four aisles over from the produce department, and Mrs. Leck had no reason to believe or foresee that produce trimmings would be on the floor of aisle

four. Mrs. Leck was a regular customer in this store and familiar with its arrangement. Secondly, she had just turned the corner into aisle four a distance of three or four feet when she slipped and fell, and at the time as she moved along, she was looking at merchandise that she wanted to buy which was located on an upper shelf, as she had a right to do. Thirdly, she was pushing the shopping cart ahead of her with some groceries in it, in the manner contemplated that shoppers would do, which cart would at least partially obstruct her view of the floor ahead of her. In short, under this record we cannot say as a matter of law that the produce trimmings were so open and obvious that Mrs. Leck was charged in law with knowledge and appreciation of the dangerous condition, and that Safeway owed her no duty to warn or protect her. See *Adam Dante Corporation v. Sharpe* (Tex.1972) 483 S.W.2d 452.

Appellant further contends that there is no evidence, and insufficient evidence to support the jury's finding in answer to Special Issue No. 4, wherein the jury found that an employee of Safeway caused the produce trimmings to be on the floor of the aisle. We overrule these contentions.

Safeway had well-defined procedures in handling produce as follows: Produce was brought into the store from the rear of the store to the back room where it is prepared for sale display. The back room is separated from the main store area by a solid wall. The back room is located directly behind aisles one and two. The door that comes out of the back room into the main store area is directly in line with and at the rear end of aisle three. Customers are not allowed in the back room. Employees of Safeway cut the ends off the stalks of celery and take the bruised or otherwise inedible leaves of lettuce off the heads of lettuce and customarily put these produce trimmings into a grinder called a "gar-bal," whereby the trimmings are disposed of. In other words, Safeway had a policy of disposing of produce trimmings as soon as they were created or acquired. When pro-

duce had been cut and trimmed, it was carried by employees through the door near aisle three and put on display in the produce department on the westernmost aisle of the store. At times when a customer at one of the checkout stands wanted one or more items of produce which were not on display, an employee would go into the backroom and get the desired item or items and bring them from the back room up to such checkout stand located in the front part of the store.

The produce trimmings on the floor of aisle four were obviously not saleable items which a customer might have dropped out of his shopping cart. The produce trimmings had to come from the back room, where customers or people other than employees were not allowed to enter, and not allowed to carry off produce trimmings. It is reasonable to assume and infer from these physical facts that the person who "caused the produce trimmings to be on the floor in the aisle" had to be someone employed by Safeway. That is to say, only the employees of Safeway exercised control over these produce trimmings and only they could have taken a different course of action which resulted in the produce trimmings being located on the floor of aisle four. In our opinion, the evidence is both legally and factually sufficient to support the jury's finding in answer to Special Issue No. 4 that an employee of Safeway caused the produce trimmings to be on the floor in aisle four.

Moreover, the evidence is both legally and factually sufficient to support the jury's finding in answer to special issue No. 5, wherein the jury found that the Appellant's employee "causing the produce trimmings to be on the floor of the aisle," was negligence. The evidence shows that all of Appellant's employees were instructed to check the aisles for debris during store business hours, and that any debris should be immediately removed from the aisle floor. Manifestly, the Appellant and its employees understood that any debris in the aisles created a hazardous situation and dangerous condition to the customers, and that

such debris should be immediately removed because of the strong likelihood that an unsuspecting customer would step upon and slip and fall upon the debris and thereby cause bodily injury. The occupier of premises has a duty to use ordinary care to keep his premises in a safe condition for his invitees, or to warn of the hazard. *Weingarten Inc. v. Razey* (Tex.1968) 426 S.W.2d 538. Our Supreme Court has held that "the ordinary invitee can presume that the premises are safe and it is not his duty to search the things offered for defects." *Blanks v. Southland Hotel* (Tex.1950) 149 Tex. 139, 229 S.W.2d 357.

Appellant's remaining points complain of the legal and factual sufficiency of the evidence to support the jury's findings in answer to special issues Nos. 8, 9, 10, 11, and 12, and of the factual sufficiency of the evidence to support the jury's failure to make findings in answer to Special Issues Nos. 13 and 16. We have carefully considered these points in the light of the entire record before us, and overrule said points as being without merit.

All of Appellant's points and contentions are overruled. Judgment of the trial court is affirmed.

AFFIRMED.